1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Frank R. Schirripa, Esq. (admitted pro hac vice)
**HACH ROSE SCHIRRIPA &**
**CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, NY 10016
Tel.: (212) 213-8311
Fax: (212) 779-0028
*fschirripa@hrsclaw.com*


*Class Counsel for Plaintiff and the Provisional Class*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL TORCZYNER, individually, on behalf of himself, and all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>STAPLES, INC.,<br><br>                  Defendant. | Case No.  16-cv-02965-JM-JLB<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFF'S MOTION FOR (1) ATTORNEYS' FEES AND COSTS AND (2) INCENTIVE AWARD**<br><br>Date:   August 28, 2017<br>Time:  10:00 a.m.<br>Judge:  Hon. Jeffrey T. Miller<br>Courtroom: 5D |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................3

    A. The Proposed Settlement Is Fair Because It Is The Product
       of Extensive Arms-Length Negotiation ......................................4

    B. Relevant Criteria Support Final Approval Of
       The Proposed Settlement.................................................5

    C. The Settlement Offers Substantial Benefits, While Continued
       Litigation Poses Considerable Risks .......................................5

         1. Risk That The Class Might Not Be Certified ...............................7

         2. The Amount Offered In Settlement ..................................8

         3. Extent Of Discovery And The State Of The Proceedings .............9

         4. The Experience And Views Of Counsel....................................10

         5. Absence Of Collusion ............................................11

         6. Reaction From The Class..........................................11

    D. The Request For Attorneys' Fees And Costs Is Reasonable
       And Well- Supported.................................................12

    E. The Requested Awards To The Class Representative
       Should Be Granted .................................................14

    F. The Sole Objector In The Case Lacks Standing
       And The Objection Has No Merit ........................................15

         1. The Kron Objection is Not a Bona Fide Objection ....................15

         2. The Objection Should Be Dismissed For Lack Of
           Standing Because a Decrease in Fees Will Not Improve
           the Objector's Position.................................................16

3.  The Objection Should Be Overruled .............................................17

a.  The Settlement Is Fair And The Objector Has Not
    Demonstrated Otherwise .....................................................17

b.  Class Members Had Ample Time to
    Submit Claims, Object, or Opt-Out....................................18

c.  This Is Not A Coupon Settlement ......................................19

III.    CONCLUSION .............................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                    **Page(s)**

3
*Baxter v. Intelius*,
        No. SACV 09-1031-AG, 2010 WL 3791487
4
        (C.D. Cal. Sep. 16, 2010) .................................................................. 6

5
*Berry v. Webloyalty.com, Inc.*,
6
        No. 10-CV-1358-H (CAB), 2011 WL 1375665
7
        (S.D. Cal. Apr. 11, 2011) ................................................................. 6

8
*Boyd v. Bechtel Corp.*,
9
        485 F. Supp. 610 (N.D. Cal. 1979) ................................................ 9

10
*Churchill Vill., L.L.C. v. Gen. Elec.*,
11
        361 F.3d 566 (9th Cir. 2004) ......................................................... 18

12
*CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*,
13
        465 Fed. Appx. 617 (9th Cir. 2012) .............................................. 19

14
*Ellis v. Naval Air Rework Facility*,
15
        87 F.R.D. 15 (N.D. Cal 1980) ....................................................... 11

16
*Faigman v. At&T Mobility, LLC*,
17
        No. C06-04622 MHP, 2011 WL 372648 (N.D. Cal Feb. 16, 2011)............ 14

18
*Fernandez v. Victoria Secret Stores, LLC*,
19
        Case No. 06-cv-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546
20
        (C.D. Cal. 2008) ............................................................................ 19

21
*Ferrington v. McAfee, Inc.*,
22
        No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).......... 6

23
*Fulford v. Logitech, Inc.*,
        No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS 29042
24
        (N.D. Cal. Mar. 5, 2010) ................................................................ 7

25
*Garner v. State Farm Auto Ins. Co.*,
26
        No. CV 08 1365 CW (EMC), 2010 WL 1687832
27
        (N.D. Cal. Ap. 22, 2010) ................................................................ 4

28

*Glasser v. Volkswagen of Am., Inc.*,
645 F.3d 1084 (9th Cir. 2011) .................................................. 3, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................ 4, 13, 18

*Hopson v. Hanesbrands, Inc.*,
No. 08-CV-0844, 2009 WL 928133 (N.D. Cal Apr.3, 2009) ...................... 15

*In re Activision Sec. Litig.*,
723 F. Supp 1373 (N.D. Cal 1989) ............................................. 13

*In re EasySaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. Aug. 13, 2010) ............................... 6

*In re HP Laser Printer Liti*g.,
No. SACV 07-0667 AG (RNBx), 2011 WL 3861703
(C.D. Cal. Aug. 31, 2011) .................................................... 11

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................. 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .............................................. 18

*In re Online DVD Rental Antitrust Litig. (Resnick v. Frank)*,
779 F. 3d 934 (9th Cir. 2015) ................................................ 19

*In re Pac. Enter Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................. 13

*In Re Southwest Airlines Voucher Litig.*,
No. 11 C 8176, 2013 U.S. Dist. LEXIS 143146, 2013 WL 5497275
(N.D. Ill. Oct 3, 2013) ...................................................... 20

*In re VistaPrint Corp. Mktg. and Sales Practices Litig.*,
MDL No. 4:08-md-1994, 2009 WL 2884727
(S.D. Tex. Aug. 31, 2009), aff'd, *Bott v. Vistaprint USA, Inc.¸*
392 Fed. Appx. 327 (5th Cir. 2010) ........................................... 6

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ....................................................................4

*Johnson v. Gen. Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011) ..................................................................8

*Keithly v. Intelius Inc.*,
    764 F. Supp. 2d 1257 (W.D. Wash. 2011) ....................................................6

*Kinsley v. Network Assocs., Inc.*,
    312 F.3d 1123 (9th Cir. 2002) ....................................................................17

*Knight v. Red Door Salons, Inc.*,
    No. C-08-1520-SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................4

*Levitt v. Southwest Airlines Co.* (*In Re Southwest Airlines Voucher Litig.*),
    799 F.3d 701 (7th Cir. 2015) .....................................................................20

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................8

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................3

*Petersen v. Lowe's HIW, Inc.*,
    Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS
    (N.D. Cal. Aug. 24, 2012) ..........................................................................19

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................................................20

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................4, 5, 7, 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................3, 5, 14

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011), cert. denied, 132 S.Ct. 1970 (2012) .............8

*Vasquez v. Coast Valley Roofing, Inc.,*
      266 F.R.D. 482 (E.D. Cal. 2010) .................................................... 5

*Williams v. MGM-Pathe Comm'n Co.,*
      266 F.R.D. 482 (E.D. Cal. 2010) .................................................. 13

*Wolford v. Gaekle (In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.),*
      33 F.3d 29 (9th Cir. 1994) .............................................................. 16

*Zucker v. Occidental Petroleum Corp.,*
      192 F.3d 1323 (9th Cir. 1999) cert. denied, 146 L. Ed. 2d 481,
      120 S. Ct. 1671 (2000) .................................................................. 16

**STATUTES**

15 U.S.C § 1681c(g) .................................................................................. 20

28 U.S.C. § 1712 ...................................................................................... 20

MCL 4th § 21.62 ................................................................................... 3, 9


**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 23 ............................................................................. 3

Fed. R. Civ. P. Rule 23(h)(2) ................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiff and Proposed Class Representative Neil Torczyner ("Torczyner" or "Plaintiff" or "Proposed Class Representative") seeks an order from this Court granting final approval of the preliminarily-approved class action settlement (the "Settlement") with Defendant, Staples, Inc. ("Staples") and granting Plaintiffs' Motion for (1) Attorneys' Fees and Costs and (2) Incentive Awards ("Motion for Attorneys' Fees, Costs and Incentive Awards").

With the assistance of the Honorable Edward A. Infante (ret.), the parties crafted a fair and equitable nationwide settlement that provides substantial benefits to approximately 3.2 million members of Staples' Rewards Program ("Rewards Program") who should have earned more Rewards when they made certain types of purchase transactions from March 24, 2009 to the present (the "Class").[1] With an estimated value of more than $2 million, the proposed Settlement provides meaningful relief to all Class members.  Specifically, the Settlement provides that the Defendant will distribute, to each Class member who submits a claim, Settlement Rewards of $10.  In addition to this sum, Staples agrees to make meaningful changes to their Terms and Conditions for product-specific coupons that would disclose the manner in which they are used to calculate Staples Rewards Points ("Rewards Points").

This favorable Settlement is the result of Plaintiff's and Class Counsel's aggressive litigation of the case in the face of extraordinary risks for more than four years.  To this day, there remains a striking split among the district courts about whether the conduct complained of here, *i.e.*, "reward club" type memberships, is even actionable.

---

[1] A more detailed description of the factual allegations is set forth in Plaintiffs' Memorandum of Points and Authorities In Support of Unopposed Motion for Preliminary Approval ("Prelim. App. Motion") (ECF No. 5-1).

The Settlement is free of collusion and results from arms' length negotiations. Only after numerous settlement conferences, including private mediation, did the parties agree to the Settlement.

The Settlement has also been widely accepted by the Class.  Over 3.2 million Staples Rewards members received notice by email and/or U.S. Mail advising them of their rights under the Settlement, including their right to opt out of the Settlement, or be heard by the Court.[2]   Of the more than 3.2 million Rewards members who received direct notice, only three Class members filed an objection to the Settlement and only 120 have requested to be excluded from the Class.  *See* Declaration of Jay Geraci Re: Notice Procedures "Geraci Decl.", ¶¶12-13.   In other words, 99.99% of the Class members are participating in the Settlement.

Notably, of the three "objections" filed with the Court, only one actually objects to the terms of the Settlement.  And, indeed, a cursory review of Mr. Kron's objection demonstrates that it lacks good faith and should be overruled by the Court. This objector does not care about the individual Class members, as evident by his colorful history of drawing out or delaying proceedings in order to collect fees.  As such, the objection has no merit and should be overruled.

Because the fee notice was, in fact, available for class members to view before the objection deadline, no additional notice is required.[3]   And, because the objecting Class member will receive $10 in Rewards, which will account for any loss he may have sustained as a result of Defendant's alleged practices, and his recovery will not be

---

[2] This Court already determined that the proposed notice program meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  *See* Order Granting Preliminary Approval of Class Settlement and Provisional Class Certification ("Preliminary Approval Order") (ECF No 20), at 4. Consistent with that plan, the Court- appointed administrator, KCC Class Action Services, LLC ("KCC"), sent direct notice via email and/or U.S. Mail to approximately 3.2 million Class members in accordance with the approved plan. *See* Geraci Decl., ¶1, 5-8.

[3] *See* Geraci Decl., ¶ 10.

1    reduced in any way by the Court's granting of Plaintiff's Motion for Attorneys' Fees,

2    Costs and Incentive Awards, he lacks standing to object to the fees, costs and awards

3    requested.  *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011)

4    ("[A] class member must be 'aggrieved' by the fee award to have standing to challenge

5    it."). Moreover, because the $10 Reward requires no "out of pocket" expense on the part

6    of the class member, this is not a "coupon settlement."[4]

7         Nothing negative has happened since the Court preliminarily approved the

8    Settlement. Plaintiff now seeks an order granting final approval of the Settlement and

9    granting Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Awards, filed on

10   July 11, 2017 (ECF. No. 27).

11   **II.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

12        When faced with a motion for final approval of a class action settlement under

13   Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry is whether the

14   settlement is "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959

15   (9th Cir. 2003).  A settlement merits final approval, when "the interests of the class as

16   a whole are better served by the settlement than by further litigation."  Manual for

17   Complex Litigation (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

18        Although the Court possesses "broad discretion" in issuing a final determination

19   that a proposed class action settlement is fair, "the court's intrusion upon what is

20   otherwise a private consensual agreement negotiated between the parties to a lawsuit

21   must be limited to the extent necessary to reach a reasoned judgment that the agreement

22   is not the product of fraud or overreaching by, or collusion between, the negotiating

23   parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

24   concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

25   1982).  The Ninth Circuit has "long deferred to the private consensual decision of the

26

27   [4] *See* Declaration of Hon. Edward A. Infante (ret.) In Support Of Final Approval Of The Proposed Class Settlement ("Infante Decl."), ¶ 12.

28

parties." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1027 (9th Cir. 1998)). "[I]n evaluating whether the settlement is fair and adequate, the Court's function is not to second-guess the settlement's terms." *Garner v. State Farm Auto Ins. Co*., No. CV 08 1365 CW EMC), 2010 WL 1687832, *8 (N.D. Cal. Ap. 22, 2010). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A.   The Proposed Settlement Is Fair Because It Is The Product of Extensive Arms-Length Negotiation.

Only after a lengthy pre-complaint investigation, a letter complaint, extensive informal discovery and numerous settlement conferences – including private mediation, did the parties agree to the terms set forth in the Settlement Agreement. *See* Prelim. App. Motion at 2. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see also Garner*, 2010 WL 1687832 at *13 ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."); *Knight v. Red Door Salons, Inc*., No. C-08-1520-SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (same).

The Parties participated in a full day mediation session in San Diego, California before Hon. Edward A. Infante (ret.) of JAMS, Inc. on October 26, 2015. *See* Prelim. App. Motion at 5. Although the mediation provided a constructive forum for settlement discussions, it did not result in a settlement. *Id.* After the mediation, Judge Infante assisted the parties in conducting additional settlement discussions that occurred throughout December 2015 and January 2016. *Id.* As a result of the progress made at the mediation and the subsequent discussions, the Parties were able to enter into the proposed Settlement Agreement. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Relevant Criteria Support Final Approval Of The Proposed Settlement.**

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez*, 563 F.3d at 963. The list of factors is not exhaustive and should be tailored to each case. *Staton*, 327 F.3d at 959. The relevant criteria support final approval of the proposed Settlement.

**C.    The Settlement Offers Substantial Benefits, While Continued Litigation Poses Considerable Risks.**

The benefits of settlement and plaintiff's chances of success are typically evaluated together. *See, e.g., Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation marks omitted). Although Plaintiff has thoroughly developed the factual and legal bases for their claims and have gathered substantial evidence showing the conduct alleged was deceptive and illegal, one cannot ignore significant risks in continuing the litigation had settlement not occurred.[5]

This case is one of a handful of federal lawsuit challenging the marketing practice of retailers "reward club" type memberships. Some courts, including this District, held that the finder of fact should consider the overall "membership" enrollment process and

---

[5] *See* Infante Decl., ¶ 4, 6-9.

determine whether it is deceptive in nature.  *See, e.g., In re EasySaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d. 1257, 1267-69 (W.D. Wash. 2011); *Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2010 WL 3910169, at *9-11 (N.D. Cal. Oct. 5, 2010).  But other courts held that the offer details and disclosures associated with an online reward club are not deceptive as a matter of law.  *See, e.g., Berry v. Webloyalty.com, Inc.*, No. 10-cv-1358-H (CAB), 2011 WL 1375665, at *14 (S.D. Cal. Apr. 11, 2011); *In re VistaPrint Corp. Mktg. and Sales Practices Litig.*, MDL No. 4:08-md-1994, 2009 WL 2884727, at *12 (S.D. Tex. Aug. 31, 2009); *aff'd, Bott v. VistaPrint USA, Inc.*, 392 Fed. Appx. 327, 328 (5th Cir. Tex. 2010); *Baxter v. Intelius*, No. 09-1031 SACV-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010).

Given the vast adverse precedent, the fact that Class Counsel negotiated a class-wide settlement valued in excess of $2 million, with material changes to the Terms and Conditions for Defendant's Rewards Program, is an extraordinary achievement.  The proposed settlement Class consists of:

> United States Staples Rewards® members who, during the Class Period [March 24, 2009 through the date of entry of the Preliminary Approval Order], [1] bought a Rewards-eligible product and a non-Rewards eligible product in the same transaction, [2] used an item-specific coupon on the non-Rewards eligible product, and [3] were negatively impacted by Staples's pro rata coupon accounting.

*See* Prelim. App. Motion, at 5.

In exchange for a release of claims and subject to this Court's approval, Defendant has agreed to notify Class members, via a claims administrator agreed to by the parties, by direct email or U.S. Mail about their rights under the Settlement Agreement, as well as create a website dedicated to the Settlement and providing online media notice of the Settlement.  *Id.*, at 5-6.  Defendant has agreed to a Maximum Settlement Amount of $2 million total, in Settlement Rewards and U.S. Dollars. The

Maximum Settlement Amount includes distributions to Class Members in the form of Settlement Rewards and all Claims Administrator Costs. Settlement Rewards will be distributed to eligible Class members who timely submit a valid claim, which is supported by a minimum settlement floor of $500,000.   Assuming the $500,000 settlement floor is not reached in one round of distribution, Defendant will distribute $10 in Settlement Rewards to each Class member, and will continue to distribute Settlement Rewards to each Class member in $10 increments until either (a) the $500,000 settlement floor is reached, or (b) Defendant completes six full such distributions.   *Id*., at 6.   And in response to Plaintiff's allegations, Defendant has changed the Terms and Conditions for its Rewards Program, Plaintiff contends materially, to the extent that it continues to account for specific coupons on a pro rata basis when calculating Rewards earned. *Id*.  To be eligible for a Settlement Rewards distribution, Class members need only complete and submit a simple Claim Form, a link to which is provided to them on the Settlement Website, to the Claims Administrator, whose email will be distributed to them via direct email or U.S. Mail, and will be posted on the Settlement Website. *Id*.

This Settlement offers substantial benefits and avoids the substantial risks associated with continued litigation.  "In this case, the negotiated amount is fair and reasonable no matter how you slice it.  There is no evidence of fraud, overreaching, or collusion." *Rodriguez,* 563 F.3d at 965.  "[T]his Settlement … guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that Class members would be left without any recovery … at all." *Fulford v. Logitech, Inc*., No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### 1.   <u>Risk That The Class Might Not Be Certified</u>

Another risk Plaintiff would face going forward is whether his claims would be certified and be maintained as a class through trial.  Defendant denies that class certification is appropriate in this case.  Defendant was expected to vigorously oppose

class certification and argue that choice-of-law issues render the proposed class unmanageable, *see, e.g., Mazza v. Am. Honda Motor Co*., 666 F.3d 581,  594-96 (9th Cir. 2012) (holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place….Because the law of multiple jurisdictions applies here … variances in state law overwhelm common issues and preclude … a single nationwide class), and that individual issues, including whether some Class members were misled by the Reward Program undermine the required commonality and typicality for certain of Plaintiff's claims, *see, e.g., Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir 2011), *cert. denied*, 132 S.Ct. 1970 (2012) (holding in a rewards program case that district court did not err in refusing to certify Consumers Legal Remedies Act class of plaintiffs). *But see Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("[T]he fact that some people have bought the [product] for other reasons does not sufficiently rebut an inference of materiality to defeat certification….).

The Court could refuse to certify the Class in part or in whole if Defendant was able to present convincing case law and facts to support their position.  This would effectively wipe out any recovery for approximately 123,448 people, leaving only the named Plaintiff to pursue his individual claim.

### 2.  **The Amount Offered In Settlement**

Class Counsel obtained meaning relief for the Class, which will serve as a benchmark for other similar cases going forward.  With a value exceeding more than $2 million, the proposed Settlement provides meaningful relief to all Class members by providing benefits that are directly in-line with the very benefits that each Class member was allegedly deprived, *i.e.*, Staples Rewards.  Not only does the Defendant agree to distribute $10 of Rewards to each Class Member who submits a complete and sufficient claim form, but in response to Plaintiff's allegations, Defendant has changed the Terms and Conditions for its Rewards Program, Plaintiff contends materially, to the extent that

1   it continues to account for specific coupons on a pro rata basis when calculating

2   Rewards earned. *See* Prelim. App. Motion, at 5-6.

3                **3.**     **Extent Of Discovery And The State Of The Proceedings**

4         Substantial investigation and discovery were completed prior to the Settlement.

5   Courts consider the extent of discovery completed and the stage of the proceedings in

6   determining whether a class action settlement is fair, adequate and reasonable. *Boyd v.*

7   *Bechtel Corp.*, 485 F. Supp. 610, 616-617 (N.D. Cal. 1979); *see also* MCL 4th § 21.62

8   at 486 ("Some factors that may bear on [a] review of settlement . . . [include] the

9   maturity of the underlying substantive issues, as measured by the information and

10   experience gained through adjudicating individual actions, the development of scientific

11   knowledge, and other factors that bear on the probable outcome of a trial on the

12   merits.").

13         Class Counsel has thoroughly investigated this case, using robust informal

14   discovery methods.  Prior to filing the lawsuit, in early 2013, Class Counsel began its

15   investigation into the subject matter of Plaintiff's suit.  Class Counsel conducted

16   substantial research through public records and the Internet to verify the scope and

17   nature of the conduct alleged. *See* Schirripa Decl. in Support of Unopposed Motion for

18   (1) Attorney's Fees and Costs and (2) Incentive Awards ("Schirripa Fee and Awards

19   Decl."), ¶ 13 (ECF No. 27-2).  Class Counsel's investigation and research efforts

20   continued for over a year after providing Staples with the initial notification of

21   Plaintiff's intentions to file this action in March 2013. *See id.*, ¶ 14.  On March 25,

22   2013, Class Counsel wrote, pursuant to the Massachusetts Consumer Protection Act, to

23   provide notice to Staples, a Massachusetts corporation, that he intended to bring a claim

24   under ch. 93A for damages incurred as a result of unfair and deceptive business

25   practices.  The letter further stated that Plaintiff intended to style the complaint as a class

26   action on behalf of all similarly situated Staples Rewards Members. *See id.*, ¶ 10.

27

28

In October 2013, after seven months of several rounds of correspondence supported by exhibits explaining each side's divergent positions, Class Counsel believes that Staples recognized certain alleged discrepancies in Plaintiff's Rewards account. *See id*., ¶ 15.   Upon further discussion and correspondence requesting document discovery into the Rewards Program policies, the underlying computer programs and database coding implemented by Staples to track and calculate Members' Rewards Points earned and membership data, Staples agreed to provide Plaintiff with pre-complaint discovery. *See id*., ¶ 16.  Class Counsel then conducted a thorough analysis of the documents produced by Defendant. *See id.*, ¶ 17.

In December 2013, having completed a thorough review of documents produced by Staples in response to Class Counsel's informal discovery request, Class Counsel reiterated Plaintiff's intention to file the instant action.   The Parties conferred telephonically several times over the next three months to negotiate the terms of a Tolling Agreement and explore the possibility of an amicable resolution.  On April 10, 2014, the Parties entered into a formal Tolling Agreement.  This Tolling Agreement continued to be extended while the Parties engaged in additional informal discovery and settlement negotiations. *See id*., ¶ 11.

Accordingly, the Settlement is the result of a thorough and extensive investigation, formal and informal discovery, and an evaluation of Plaintiff's claims.

### 4.      The Experience And Views Of Counsel

Class Counsel advocates the proposed Settlement as fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole.  Here, Class Counsel, HRSC, is extremely qualified and well-informed about the facts and law of the case and believes this proposed Settlement to be an excellent result.  HRSC has extensive experience in prosecuting complex class actions, including cases involving consumer fraud. *See id.*, ¶ 29.  With the firm's combined breadth and depth of experience, there can be no doubt that Class Counsel is qualified to conduct the litigation.  Likewise, Defendant's Counsel

is well versed in complex class actions and is highly qualified.  Where class counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980).

Judge Infante, a retired jurist with more than 30 years of facilitating resolutions of disputes as a judge and a mediator, endorsed counsel for both Plaintiff and Defendant as being highly skilled and knowledgeable.  *See* Infante Decl., ¶ 1.  Judge Infante worked closely with the parties to craft the terms of the Settlement, is extremely knowledgeable about the facts and strength and weaknesses of the parties' respective cases, and supports the Settlement as fair, adequate and reasonable. *Id.*, ¶¶ 11-13.

### 5.    Absence Of Collusion

The Court must address the absence of collusion in considering the reasonableness of a settlement submitted for final approval.  Here, the Settlement is presumptively fair because there is nothing to suggest collusion between the parties.  All material terms of the Settlement Agreement were reached after a private mediation session conducted by a highly regarded and experienced mediator, Judge Infante, and after multiple subsequent settlement discussions, also coordinated by Judge Infante.  *See* Prelim. App. Motion, at 11.  The fact that mediation was overseen by a neutral third party evidences the non-collusive nature of the negotiations.  *See, e.g., In Re HP Laser Printer Litig.*, No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding that fact that parties appeared before neutral third party mediator evidence supporting finding that there was no collusion between parties in reaching settlement).

### 6.    Reaction From The Class

Reaction to the Settlement from the Class has been overwhelmingly positive. Out of the 3.2 million Rewards members identified as Class members – only three filed an objection.  *See* Schirripa Decl. ¶ 4.[6]

### D.    The Request For Attorneys' Fees And Costs Is Reasonable And Well-Supported.

As set forth more fully in Plaintiff's Unopposed Motion for Attorneys' Fees, Costs and Incentive Awards (ECF No. 27-1), and the documents filed in support thereof, the requested $500,000 in attorneys' fees and costs are justified and fair.  If granted, the award will not reduce the reward made to any Class members, and the award sought is reasonable considering the work done and the results achieved.

The Settlement is the result of strenuous and efficient efforts by Class Counsel throughout challenging phases of investigation, discovery, and adversarial litigation in a case involving complex facts and novel issues of law.  Throughout this process, Class Counsel shouldered immense costs and considerable risks.  They worked tirelessly with no guarantee of ever being paid, and in the face of a clear split of authority as to the underlying law.

Considering the excellent value of the settlement, the benefits conferred on the Class and Class Counsel's knowledge and experience, the attorneys' fees and costs are reasonable. Class Counsel achieved an excellent settlement while ultimately avoiding the uncertainties and risks of contested class certification and trial.  Throughout this litigation, Class Counsel has dedicated substantial time and resources prosecuting the

---

[6] Two of the three objections filed with the Court are misplaced.  Robert Balick objected to the Settlement, but on the grounds that *cy pres* funds "must be redistributed pro rata to current legitimate class members".  Because the Settlement does not provide for a distribution of funds via *cy pres*, Mr. Balick's objection is unsubstantiated. S*ee* Objection to Proposed Settlement (ECF No. 29).  One other individual, Scott Kelly, filed an objection to the Settlement. S*ee* Objection to Proposed Settlement (ECF No. 23).  Mr. Kelly, however, did not object to the reasonableness or adequacy of the Settlement as a whole; rather, he did not believe that his company was impacted as a result of Defendant's alleged practices.  As such, we believe Mr. Kelly's objection is more akin to an exclusion, and should be treated as such.

1   case and will continue to expend significant amounts of time through the settlement and

2   claims process.  *See* Declaration of Frank R. Schirripa in Support of Unopposed Motion

3   for (1) Preliminary Approval of Class Settlement, (2) Provisional Class Certification,

4   (3) Distribution of Class Notice, and (4) Scheduling of Fairness Hearing ("Schirripa

5   Prelim. App. Decl.") ¶ 17 (ECF No. 5-2).

6       The Settlement Agreement provides and the parties have agreed that Class

7   Counsel may apply to the Court for an amount not to exceed $500,000 total in attorneys'

8   fees and costs.  *See* Prelim. App. Motion, at 14.   Class Counsel is applying to the Court

9   for an award of attorneys' fees of $484,435.20, or approximately 24.22% of the

10  Settlement value, and requests reimbursement of litigation expenses incurred in

11  connection with the prosecution of the Action in the amount of $15,564.80.   In the

12  aggregate, Class Counsel requests a $500,000 award for combined attorneys' fees and

13  costs. *See* Schirripa Fee and Awards Decl. ¶ 22.   Twenty-five percent has long been the

14  benchmark in the Ninth Circuit, *see Hanlon*, 150 F.3d at 1029, and many courts in this

15  Circuit have awarded fees in excess of twenty-five percent of the settlement value. *See,*

16  *e.g. In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% fee award);

17  *Williams v. MGM-Pathe Comm'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (one-third

18  of total fund awarded); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375

19  (N.D. Cal. 1989) (noting that fee awards in common fund cases "almost always hovers

20  around 30% of the fund created by the settlement"). "[A]bsent extraordinary

21  circumstances that suggest reasons to lower or increase the percentage, the rate should

22  be set at 30%," reasoning that this will "encourage plaintiffs' attorneys to move for early

23  settlement, provide predictability for the attorneys and the class members, and reduce

24  the time consumed by counsel and court in dealing with voluminous fee petitions." *In*

25  *re Activision Sec. Litig.*, 723 F. Supp. at 1378-1379.

26      Moreover, Plaintiff's fee request also satisfies a lodestar-multiplier crosscheck.

27  *See* Motion for Attorneys' Fees, Costs and Incentive Awards, at 9-11 (ECF No. 27-1).

Plaintiff's collective lodestar as of was $246,272.50, constituting only a 1.97 multiplier, which has been reduced and will continue to be reduced due to the additional work Class Counsel will have to perform until this case is completed.

For these reasons and those set forth in Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Awards, the attorneys' fees sought are objectively reasonable and supported by lodestar cross-check.

## E.   The Requested Awards To The Class Representative Should Be Granted.

To recognize the time and effort the Class Representatives expended for the benefit of the Class, and the risks they accepted by leading the litigation, Plaintiff asks the Court to grant the following incentive award, which reflects the time and effort the Class Representative dedicated to the litigation:

*$5,000 for Plaintiff Neil Torczyner.*   The requested amount reflects the involvement and time the Class Representative dedicated to the case.  For example, Mr. Torczyner, among other things, has been involved in this case since inception, including numerous pre-litigation telephonic and in-person meetings with Class Counsel to discuss, investigate and develop the class allegations.   Mr. Torczyner was subject to and provided documents in connection with the Parties' informal pre-litigation discovery exchange.  In addition, Mr. Torczyner was actively involved in settlement strategy and negotiations, and participated in the mediation telephonically.  *See* Schirripa Fee and Awards Decl., ¶¶ 44-45.

Given this individual's significant contributions to this litigation, and viewed in light of well-established standards for such awards, the amount sought is fair and appropriate. *See, e.g., Staton*, at 976-77) (finding incentive awards between $2,000 and $25,000 reasonable depending on participation in litigation). Moreover, California district courts routinely award incentive payments. *See, e.g., Faigman v. AT&T Mobility, LLC*, No. C06-04622 MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011);

*see also Hopson v. Hanesbrands, Inc.*, No. 08-CV-0844, 2009 WL 928133, at \*10 (N.D. Cal. Apr. 3, 2009). Defendant does not object to this amount, and the total of $5,000 in requested incentive award is modest in relation to the total Settlement value of over $2 million. No Class member has objected to the requested incentive award for Mr. Torczyner.

## F.   The Sole Objector In The Case Lacks Standing And The Objection Has No Merit.

The Settlement provides valuable relief to the Class and falls squarely within the range of reasonableness for settlements routinely approved by courts in this Circuit. But, as is typical in large class action settlements, a single professional objector with an anti-class action agenda has filed an objection.[7] The objection assails the fairness of the Settlement as a whole, yet fails to provide any substantial evidence to support the claims that 1) notice was inadequate; 2) attorney's fees are unreasonable; or 3) the settlement is a "coupon settlement." At most, the objection shows that one person does not believe this is the best Settlement that could theoretically have been reached. This unsubstantiated objection does not justify rejecting the Settlement and delaying or potentially all together precluding recovery for the other 123,447 Class Members. The standard requires that the Settlement fall within the range of fairness— this Settlement does, and 99.99% of the Class agree.

### 1.   The Kron Objection is Not a Bona Fide Objection

Nominal objector, Scott A. Kron, Esq. is a professional objector whose ideological agenda is to disrupt class actions, not improve them.[8] He plainly does not

---

[7] *See* Objection to Proposed Settlement (ECF No. 30).

[8] *See* Plaintiff's Combined Motion for Final Approval of Class Settlement and Response to Objections, *Stephan Zouras LLP v. American Registry LLC,* Case No. 14-cv-943 ECF No. 58), at 23 (N.D. Ill. filed April 6, 2015) ("Kron routinely objects to class action settlements of all shapes and sizes, usually representing his family and friends". See, e.g., Couser v. Comenity Bank et al., Case No. 12-cv- 2484 (S.D. Cal.) (Docket No. 71) (objection by Anne. L. Card, Kron's current partner at Kron & Card LLP); Connor v. JPMorgan Chase Bank et al., Case No. 10-cv-1284 (S.D. Cal.) (Docket No. 125) (objection by Stephan A. Kron and Cheryl Kron, Kron's father and

care about the individual Class members in this case, and he has no problem delaying or precluding their benefits altogether.  Aside from Mr. Kron's personal agenda, it is hard to understand why he is objecting to this Settlement, which was made after arms-length negotiations, deemed to be fair and adequate, and will account for any loss Mr. Kron may have sustained as a result of Staples Rewards Program.[9]

> ## 2. The Objection Should Be Dismissed For Lack Of Standing Because a Decrease in Fees Will Not Improve the Objector's Position

The objector lacks Article III standing to object to the proposed Settlement, and cannot purport to represent the interests of people who never filed a claim, or filed a claim seeking a refund but never objected.  Article III requires "some actual or threatened injury as a result of the putatively illegal conduct of the defendant … likely to be redressed by a favorable decision."  *Wolford v. Gaekle (In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.)*, 33 F.3d 29, 30 (9th Cir. 1994).  In *In re First Capital Holdings*, a class member filed an objection to the plaintiffs' requested award of attorneys' fees as being too excessive. *Id.*  The court held that the objector lacked standing to file the federal appeal, Rule 23(h)(2) notwithstanding, since the objector could neither show (i) she had been injured or (ii) how the injury could "likely be redressed by a favorable decision" by the federal court, both of which were necessary to confer standing. *Id.*, at 30.

The Ninth Circuit has held that where an objection merely challenges the fee award but does not show how granting the requested relief would benefit the objector or redress an injury, then there is fundamentally no standing to object.  *See id.; see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) *cert. denied*,

---

mother); Pappas v. Naked Juice Co. of Glendora, Inc., Case No. 11-cv-8276 (C.D. Cal.) (objection by Adam Andersen); Schlesinger et al. v. Ticketmaster, Case No. BC 304565 (Cal. Super. Ct.) (objection by Erika Kron, Kron's wife); Mount et al. v. Wells Fargo Bank N.A., Case No. BC395959 (Cal. Super. Ct.) (objection by Stephen Kron, Kron's father) appeal pending, Appeal No. B 260585 (Cal. 2d Dist. Ct. App.)).

[9] *See* Infante Decl. ¶ 11-13.

146 L. Ed. 2d 481, 120 S. Ct. 1671 (2000) (finding lack of standing where "it is hard to see how cutting plaintiffs' attorneys' fees can do [the class member] any good [because] [h]e gets the same [settlement] whether the fee is cut or not ..."); *Kinsley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (finding lack of standing because objector could not demonstrate how vacating fee award would benefit objector). The Ninth Circuit has held that conjectural allegations that a fee award might be collusive or that reducing it might have resulted in a better outcome for the objector cannot meet the constitutional requirement that the injury be "concrete and particularized" and that the possibility of redress is not "conjectural or hypothetical." *Glasser*, 645 F.3d at 1089.

Mr. Kohn does not identify or explain how he has been aggrieved by the Settlement or how a reduction in the fee award would redress whatever wrong he asserts exists. To the contrary, Mr. Kohn cannot show how adjusting the fee award would in any way improve his position. Indeed, the requested attorneys' fees are separate and apart from the Rewards to be distributed to the Class – *i.e.*, a dollar less of attorneys' fees does not equate to a dollar more of Rewards for the Class. Thus, Mr. Kohn has not suffered any "injury," much less one that could be "redressed by a favorable decision" in this Court or in the Ninth Circuit.

### 3.   The Objection Should Be Overruled

#### a)   The Settlement Is Fair And The Objector Has Not Demonstrated Otherwise

The objector has identified no way in which the settlement value is unfair. The Settlement not only provides redress to Class members by offering them $10 in Rewards, it compelled the Defendant to make meaningful changes to the Terms and Conditions of its Rewards Program.

Out of the approximately 3.2 million Rewards members who were sent direct notice of the Settlement, only one objected to the terms of the settlement.[10]  *See* ECF No. 30.  This small percentage (0.00003125%) constitutes strong evidence of the fairness of the Settlement.  *Rodriguez*, 563 F.3d at 967; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that low number of objections supports fairness finding); *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").  Significantly, "[i]n Litigation involving a large class it would be 'extremely unusual' not to encounter objections," thus the fact that objections were filed does not undermine final approval.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998).  And this case compares favorably to the number of objections the Ninth Circuit regularly considers in other cases when approving class action settlements.  *Rodriguez*, 563 F.3d at 967 (finding favorable class reaction where 54 of 376,301 putative class members who received notice submitted objections); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (finding favorable class reaction where 45 individuals submitted objections out of 90,000 putative class members who received notice).

### b)   Class Members Had Ample Time to Submit Claims, Object, or Opt-Out

The objector avows that class counsel did not post its fee motion on the class action website as of the date of the filing of his objection, which was July 21, 2017. *See* ECF No. 30.  Plaintiff's fee application was timely filed with the Court via ECF on July 10, 2017.  *See* ECF No. 27.  Only July 12, 2017, Plaintiff's counsel requested that the claims administrator post the fee application on the settlement website.  *See* Geraci Decl., ¶ 10. The fee notice was posted to the settlement website on July 14, 2017, seven (7) days prior to Mr. Kron's objection.  *Id.*  Contrary to Mr. Kron's objection, the fee

---

[10] As noted above, of the three objections filed with the Court – one was more akin to an exclusion and the other objected to *cy pres*, which is not a part of the settlement terms.

notice was, in fact, available for class members to view before the objection deadline. As such, no additional notice is required.

**c)**      <u>**This Is Not A Coupon Settlement**</u>

The objector's protestations that this is a coupon settlement are belied by the facts and the law. The $10 Staples Rewards can be used to purchase items up to $10, and, thus, legally and factually different from a "coupon." *In CLRB Hanson Indus., LLC v. Weiss & Assocs*., PC, 465 Fed. Appx. 617, 619 (9th Cir. 2012), the Ninth Circuit expressly held that a settlement that gives "cash or cash-equivalents" is not a coupon settlement for CAFA purposes. *See also* Infante Decl., ¶ 12 (explaining value and appropriateness of $10 Rewards given class members' affirmative desire to receive rewards dollars by participating in enrollment process and fact that Staples does not stand to gain financially from process). Other courts in this Circuit are in accord. Specifically, in *Fernandez v. Victoria Secret Stores, LLC*, Case No. 06-cv-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at * 38-40 (C.D. Cal. 2008), a Central District Court judge held that a settlement that distributed a transferrable gift card to defendants' stores was not a coupon. *Id.* The court noted that the award had cash value, in that it could be sold because it was transferrable, and that, because the amount exceeded from a compensatory standpoint what each plaintiff would have received had there been no violation of the law, it was amply fair. *Id.*; *see also Petersen v. Lowe's HIW, Inc*., Nos. C 11-01996 RS, C 11-03231 RS, C 11-02193 RS (N.D. Cal. Aug. 24, 2012) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to Lowe's); *In Re Online DVD Rental Antitrust Litig., (Resnick v. Frank)* 779 F.3d 934, 952 2015 ILRC 1373 (9th Cir. 2015) ("part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products.")

Not only is the Seventh Circuit case cited by the objector not binding, it detracts nothing from the above analysis or conclusion.[11]   The objector attempts to liken the present action to *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). *Redman,* however, is factually distinct from the present action. *Redman* involved a class action that was filed under the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C.S. §1681c(g) for printing the expiration date of customer's credit cards on receipts it gave to customers. *Id.* However, under the terms of the settlement, each victim of the violation was provided a $10 coupon, which was not equivalent to the violation. On the contrary, here, class members are receiving the exact same thing that they were allegedly deprived – Staples Rewards.  As such, the present case is more akin to *Levitt v. Southwest Airlines Co.* (*In Re Southwest Airlines Voucher Litig.*)*,* 799 F.3d 701 (7th Cir. 2015).   In *Levitt*, class members who purchased but were unable to redeem Southwest drink vouchers were compensated with vouchers that could be redeemed at a later date. The Seventh Circuit determined that the "coupon settlement" provisions of the Class Action Fairness Act, 28 U.S.C. §1712, allowed the district court to award class counsel an attorney fee based on the lodestar method rather than the value of the redeemed coupon because "the class members are getting back exactly what they had before, an unexpired drink voucher." *Id.* at 712 (citing *In Re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 143146, 2013 WL 5497275, at *4 (N.D. Ill. Oct 3, 2013).

Like *Levitt*, "this is not a case where coupons of dubious value will be provided to compensate for a loss of cash".  *See Levitt*, 799 F.3d at 711.  Given that because the Class members here are receiving the exact same form of compensation (*i.e.*, Staples Rewards) that they were allegedly deprived, this is not a traditional "coupon settlement" and should not be treated as such.

---

[11]  *See* ECF No. 30.

III.    **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that this Court grant final approval to the proposed Settlement and grant Plaintiff's Motion for Fees, Costs and Incentive Awards in its entirety.

Dated:  August 7, 2017

HACH ROSE SCHIRRIPA & CHEVERIE LLP

By:     */s/ Frank R. Schirripa*
        Frank R. Schirripa, Esq.

112 Madison Avenue, 10th Floor
New York, NY 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
*fschirripa@hrsclaw.com*

*Class Counsel for Plaintiff and the
Provisional Class*

BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP

12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel.: 858-793-0070
Fax: 858-793-0323
*davids@blbglaw.com*

*Liaison Counsel for Plaintiff and
Provisional Class*

**CERTIFICATE OF SERVICE**

I, Frank R. Schirripa, certify that on August 7, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record registered with the CM/ECF system.

Dated: August 7, 2017

HACH ROSE SCHIRRIPA
& CHEVERIE LLP

By: */s/ Frank R. Schirripa*
        Frank R. Schirripa, Esq.