UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL TORCZYNER, individually and on behalf of all others similarly situated<br><br>               Plaintiff,<br><br>v.<br><br>STAPLES, INC.,<br><br>               Defendant. | Case No.: 16cv2965 JM (JLB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ATTORNEYS' FEES**<br><br>**<u>FINAL JUDGMENT</u>** |

Before the court are Plaintiff Neil Torczyner's motions for final approval of class action settlement, (Doc. No. 31), and attorneys' fees, (Doc. No. 27). Defendant Staples, Inc. ("Staples") does not oppose either motion. (Doc. No. 32.) Because the settlement is fundamentally fair, reasonable, and adequate, and the fees request is reasonable and well supported, the court grants both motions, approves the settlement, and enters final judgment.

## BACKGROUND

**I.    Parties, Claims, and Procedural History**

Staples provides retail and online shopping for office supplies, as well as a range of copy, print, and technology services to both businesses and individuals. Plaintiff is a

1

Staples customer and member of Staples Rewards® ("Rewards"), a free loyalty program that offers benefits and rewards for making qualifying purchases at Staples.

Beginning in late 2012, Plaintiff and his counsel began investigating whether Staples's application of item-specific coupons on a pro rata basis shorted Rewards program members of Rewards points, which can be accrued to obtain Rewards certificates for use on Staples products. (See Doc. No. 5-1 at 9.) On March 25, 2013, Plaintiff, as required by Massachusetts law, notified Staples that he intended to bring a claim under Massachusetts's Regulation of Business Practice and Consumer Protection Act. (Id. at 8.) Approximately seven months later, after "several rounds of correspondence" between the parties "supported by exhibits explaining each side's divergent positions," Staples "agreed to provide Plaintiff with pre-complaint discovery." (Id. at 9.) After reviewing the discovery, Plaintiff and Staples continued discussions and agreed to "enter[] in a formal Tolling Agreement" which was "extended while the Parties engaged in additional informal discovery and settlement negotiations." (Id. at 10.) As part of those negotiations, the parties participated in a private, full-day mediation session before the Honorable Edward A. Infante. Though the parties did not resolve their dispute at that time, the settlement in the case is, at least in part, the result of those efforts. (See id.)

On December 6, 2016, Plaintiff filed a class action complaint for damages flowing from three causes of action: (1) violation of Massachusetts's Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2, (Doc. No. 1 ¶¶ 22–32); (2) breach of contract, (id. ¶¶ 33–36); and (3) breach of the implied duty of good faith and fair dealing, (id. ¶¶ 37–40). The complaint alleges, in short, that Staples caused Rewards members to accrue fewer Rewards points than represented by deducting the total of item-specific coupons proportionally across all items in a single transaction before calculating the amount of Rewards points for the transaction.

Shortly after filing the complaint, Plaintiff moved, unopposed, for preliminary approval of a class settlement. (Doc. No. 5.) The court granted the motion on April 25,

2017, and issued an order preliminarily approving the settlement, preliminarily certifying the class for settlement purposes, approving the class notice program, and appointing class counsel. (Doc. No. 20.)

Pursuant to the court's order, the claims administrator took a number of actions to provide notice of the settlement to the proposed class. Initially, the claims administrator made available an official settlement website which contained the full notice and other key documents, along with claims filing information and important deadlines. (Doc. No. 31-3 at 4, ¶ 10.)[1] The claims administrator also sent 2,797,075 email notices and 1,228,941 notice postcards to class members. Finally, the claims administrator implemented an online media notice which displayed sponsored results in response to Google searches for "Staples" and related terms. (Doc. No. 31-3 at 3–4, ¶ 6–10.) Each form of notice informed class members as to the procedural requirements and deadline for opting out or objecting to the settlement.

All told, more than 3.2 million Rewards members received direct notice of the settlement through these methods. (Doc. No. 31 at 2.) As of the filing of Plaintiff's motion for final approval, the claims administrator had received 123,511 timely claims forms, 120 opt-outs, and 3 objections. (Doc. No. 31-3 at 4–5, ¶ 11–13.)

Plaintiff now moves, again unopposed, for final approval of the class settlement, and for attorneys' fees, costs, and a named plaintiff incentive award. The court held a fairness hearing on Plaintiff's motion on August 28, 2017, to determine whether the class settlement should be granted final approval as "fair, adequate, and reasonable" pursuant to Federal Rule of Civil Procedure 23(e) and to allow all proposed settlement class members an opportunity to comment on the settlement.

## II. Settlement Terms

The pertinent terms of the parties' settlement are as follows.

---

[1] On July 14, 2017, the claims administrator added Plaintiff's motion for attorneys' fees to the website.

### A.   Class Definition

The settlement agreement between the parties establishes a class defined as: "United States Staples Rewards® members who, during the Class Period, [1] bought a Rewards-eligible product and a non-Rewards eligible product in the same transaction, [2] used an item-specific coupon on the non-Rewards eligible product, and [3] were negatively impacted by Staples's pro rata coupon accounting.  Excluded from the Class are Staples's Counsel, Staples's officers and directors, and the judge presiding over the Action." (Doc. No. 5-3 § 1.8.)

### B.   Class Award

Each class member who submits a timely and valid claim form will receive $10 in "Settlement Rewards." (Id. § 2.2.)  Settlement Rewards are "credit usable for purchases at Staples retail stores and on Staples.com," which are subject to the same terms as Rewards certificates distributed by Staples as part of the Rewards program. (Id. § 1.31.)  Under the agreement, Staples will provide up to $2,000,000 worth of Settlement Rewards to class members.[2] (Id. §§ 1.23, 2.2.)  And if the amount of Settlement Rewards claimed does not reach $500,000, Staples will distribute up to six subsequent rounds of Settlement Rewards to reach that amount. (Id. §§ 1.20, 2.2.)

### C.   Disclosures

Staples agrees that, if it continues to utilize a pro rata coupon allocation, it will include the following statement in the terms and conditions for its Rewards program: "Product specific coupons are applied pro rata (proportionately allocated across all items purchased in a given transaction) for the purposes of calculating Qualifying Purchase Amount(s) for Rewards." (Id. § 2.1.)

---

[2] The $2,000,000 maximum settlement amount also includes the claims administrator's costs.  But because fewer than 200,000 class members claimed Settlement Rewards, there is no need to reduce each Settlement Reward in order to cover those costs while staying under $2,000,000.

### D.  Attorneys' Fees and Costs, Incentive Award, and Settlement Administration Costs

The agreement allows Plaintiff's counsel to request attorneys' fees and costs of up to $500,000 and a named plaintiff incentive award of up to $5,000, and Staples agrees not to object to either request.  (Id. §§ 2.3, 2.4.)  Staples will pay both the fee award and the named plaintiff incentive award separate and apart from the Settlement Rewards that serve to compensate the class.  (Id. § 2.5.)  Thus, any reduction by the court, or an appellate court, of the attorneys' fees and costs or incentive award will not affect the class award.  Staples will also pay for costs associated with the administration of the settlement.[3]  (Id. § 2.7.)

## DISCUSSION

The court will first address Plaintiff's motion for final approval of the class action settlement.  The court will then address Plaintiff's motion for attorneys' fees.

### I.  Motion for Final Approval

#### A.  Legal Standards

Federal Rule of Civil Procedure 23(e) requires a district court's approval in order for any "claims, issues, or defenses of a certified class" to be "settled, voluntarily dismissed, or compromised . . . ."  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).  In making this decision, the court must consider "whether the settlement is fundamentally fair, adequate and reasonable."  Id.  If the settlement will bind class members, Rule 23(e)(2) requires the court to hold a hearing.

Where the class is certified by stipulation of the parties for settlement purposes only, the court must still examine, and indeed give "heightened[] attention" to, the

---

[3] As discussed in footnote 2, these costs will be factored into the maximum settlement amount, along with the settlement rewards, all of which may not exceed $2,000,000.

question of whether that stipulated class meets the requirements for certification under Rules 23(a) and (b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620–21 (1997).

### B. Class Certification

As discussed above, when confronted with a request for settlement-only class certification, the court must determine whether the class is properly certified under Rule 23(a) and Rule 23(b) before turning to whether the settlement is fundamentally fair, reasonable, and adequate as required by Rule 23(e).

#### 1. Rule 23(a)

To certify a class under Rule 23(a), the court must find that there is (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

##### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In deciding whether the numerosity requirement is met, courts must decide whether, without the formation of a class, "potential class members would suffer a strong litigation hardship or inconvenience if joinder were required."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964).  A potential class of 3.2 million Rewards members (the total number of customers who were sent notice of the settlement) is obviously large enough to meet the requirements of Rule 23(a)(1).  See, e.g., General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Thus, the numerosity requirement is met.

##### b. Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class."  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, there is only one question at issue: whether Staples's application of item-specific coupons on a pro rata basis shorted customers of Rewards points.  Thus, the commonality requirement is met.

### c.     Typicality

The claims of the representative parties also must be typical of the claims of the entire class. Fed. R. Civ. P. 23(a)(3). This rule embodies "permissive standards"—the claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. As the claims of Plaintiff and the class all arise from uniform conduct, involve virtually the policy, and are based on the same legal theories, the typicality requirement is met here.

### d.     Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The court must decide (1) whether Plaintiff and his counsel have conflicts of interest with other class members, and (2) whether Plaintiff and his counsel have vigorously prosecuted the case for the entire class. Hanlon, 150 F.3d at 1020.

There is no indication that Plaintiff and counsel have any interests in conflict with the class. The parties state that Plaintiff has taken his duty as class representative very seriously and has actively participated in the prosecution of this case. With the exception of the $5,000 incentive award, Plaintiff will receive no more compensation than other members of the class. There is also no indication that class counsel has not vigorously prosecuted the case on behalf of the class. The only compensation class counsel will receive is the proposed class counsel award.

In sum, Plaintiff has met the requirements of Rule 23(a).

### 2.     Rule 23(b)

The court must also decide if Plaintiff has met one of the requirements of Rule 23(b). Rule 23(b)(3), the subdivision most commonly used, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication.

///

### a. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal citations omitted). "[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009).

Though the predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement, Amchem, 521 U.S. at 624, the court finds that common issues predominate here. In fact, the entire dispute revolves around a single, universal practice that applied at all times to all potential class members.

### b. Superiority

The class action must also be superior to other methods available for adjudication. Zinser v. Accuflix Research Institute, Inc., 253 F.3d 1180, 1190 (9th Cir. 2001). To assess superiority, courts look to class members' interests in individually controlling the cases, the extent and nature of existing litigation by class members, and the desirability of concentrating the litigation on the claims in the forum, among other factors. Fed. R. Civ. P. 23(b)(3). Here, there is no indication that individual members want to control the case, there does not appear to be any other existing litigation, and concentrating the claims in this forum is desirable. Thus, the superiority requirement is met.

In sum, Plaintiff has met the requirements of Rule 23(b). As a result, the class is properly certified for settlement purposes.

### C. Rule 23(e)

After ensuring that the proposed class satisfies Rule 23(a) and Rule 23(b), the court must ensure that the settlement satisfies Rule 23(e). Among other requirements, Rule

23(e) demands that notice be directed in a reasonable manner[4] and the settlement be fair, reasonable, and adequate. Fed R. Civ. P. 23(e)(2). To make this latter determination, the court considers a number of factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Officers for Justice, 688 F.2d at 624. "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Id. While the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," Hanlon, 150 F.3d at 1026, the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion," id. at 1027.

After considering the relevant factors and case history, the court finds that the settlement in this case meets the requisite standards.

As an initial matter, there is no evidence of collusion, and indeed, "no basis to conclude that the negotiations were anything other than a good faith, arms-length attempt by experienced and informed counsel to resolve this matter through compromise." See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013). The agreement

---

[4] The court finds that the notice provided to the class satisfied the court's preliminary approval order, section 3.3 of the settlement agreement, Rule 23(e), and due process. It (i) fully and accurately informed class members about the lawsuit and settlement; (ii) provided sufficient information so that class members could decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the settlement; (iii) provided procedures for class members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.

comes in the wake of "a lengthy pre-complaint investigation, a letter complaint, extensive informal discovery and numerous settlement conferences—including private mediation." (Doc. No. 31-1 at 11.)  What's more, the attorneys on both sides have extensive experience in nationwide consumer class action cases.

As for the settlement itself, the court finds that it is fair, reasonable, and adequate. First and foremost, the amount offered in settlement strikes the court as appropriate. While the award to each class member is undoubtedly small—$10 in Settlement Rewards—the harm suffered appears to have been small as well.  Moreover, the class is recovering exactly what it claims to have lost: Rewards credits that can be used just as Rewards certificates could have been used, i.e. for products at Staples retail stores or at Staples.com without additional expense to class members.  Moreover, there is no guarantee Plaintiff could prove that he and the class are entitled to recover on his claims at all.  As Staples points out, "Staples Rewards is a free program, which Staples could cancel at any time, and the pro rata coupon allocation was neutrally applied, oftentimes benefiting putative Class Members." (Doc. No. 32 at 6.)

Furthermore, if this action does not settle now, both parties will face the prospect of lengthy litigation and significant expense, including the time and money necessary to file motions to dismiss, for class certification, and for summary judgment, all before taking the case to trial.  And given the issues involved, appellate proceedings are also possible.

Finally, class members have resoundingly approved the settlement.  The claims administrator provided notice of the settlement to more than 3.2 million potential class members, and although most took no action at all, over 120,000 submitted timely claim forms, only three filed objections,[5] and only 120 requested exclusion.

---

[5] The court overrules each objection to the settlement.  First, Scott Kelly objects because his firm, Publishing Data Management, Inc., was not "particularly damaged" by the alleged practices—"certainly not even to the extent of the $10 proposed settlement." (See Doc. No. 23.)  That objection is not reason to disturb the settlement.  Second, Robert

In sum, the court finds that the settlement satisfies the requirements of Rule 23(e). As a result, the court grants final approval of the settlement.

## II.    Motion for Attorneys' Fees and Costs

Plaintiff, on behalf of class counsel (Hach Rose Schirripa & Cheverie LLP, via

---

Balick objects to any "cy pres undistributed residual funds to any non-class members" and requests that, "should cy pres funds be addressed, they . . . be redistributed pro rata to current legitimate class members, to fully compensate their losses." (See Doc. No. 29.) As the agreement does not have a cy pres provision, Mr. Balick's concerns are unfounded. Lastly, Scott Kron objects for three reasons: (1) Plaintiff's fee motion was not on the settlement website as of the date he filed his objection; (2) Plaintiff's fee request is too high "unless class members will actually receive the maximum amount of $2 million available in Staples Rewards"; and (3) the settlement is "essentially a coupon settlement and the rules surrounding coupon settlements should be applied." (See Doc. No. 30.) None of these reasons merits rejection of the settlement. First, Jay Geraci, Senior Project Manager for claims administrator KCC Class Action Services, Inc. declares under penalty of perjury that the fee motion was posted to the website on July 14, 2017. (See Doc. No. 31-3 at 4, ¶10.) Mr. Kron filed his objection one week later, on July 21, 2017. (See Doc. No. 30.) Anyway, Mr. Kron does not have standing to object to the fee award. See Glasser v. Volkswagen Of Am., Inc., 645 F.3d 1084, 1088–89 (9th Cir. 2011) (holding that a class member must be "aggrieved" by the fee award to have standing to challenge it and stating that because objector "does not contend that Plaintiff's counsel colluded with [defendant] to orchestrate an excessively high fee award in exchange for an unfair settlement for the class," the class member could not meet the requirements of Article III standing). Second, even if Mr. Kron had standing to object to the fee award, Plaintiff's request for an award based on the maximum settlement amount is proper. See Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (concluding that district court abused its discretion by basing fee on class members' claims against a common fund rather than on a percentage of the entire fund, even though some class members made no claims against the fund, resulting in money remaining with the defendants). Third, under established Ninth Circuit precedent, the $10 Rewards voucher is not a coupon (and, as discussed above, provides class members exactly what they claim to have lost). See In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 950–52 (9th Cir. 2015) (holding that $12 voucher was not a coupon where it gave class members flexibility to "purchase one of many different types of products" without spending his or her own money); see also In re Easysaver Rewards Litig., No. 09cv2094 BAS (WVG), 2016 WL 4191048, at *2 (S.D. Cal. Aug. 9, 2016) (same).

Frank R. Schirripa and Michael A. Rose), requests a $500,000 award in attorneys' fees and costs, which is approximately 25% of the maximum settlement value. In addition, Plaintiff requests a class representative incentive award of $5,000. Staples has agreed to both requests.

### A.  Attorneys' Fees and Costs

While attorneys' fees and costs may be awarded in a class action where authorized by the parties' agreement, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

To fulfill that obligation, the court must first determine how, exactly, to evaluate Plaintiff's request. The Ninth Circuit has "approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances." Id. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Id. at 942. "Because the benefit to the class is easily quantified in common-fund settlements, [the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." Id.

Although the settlement in this case does not involve a traditional common fund, Plaintiff argues that the common fund doctrine should apply. (Doc. No. 27-1 at 12 (citing Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989) ("The common fund doctrine is properly applied . . . if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting.").) The court agrees. See In re Bluetooth Headset, 654 F.3d at 943 (discussing the appropriate use of the constructive common fund approach where "'the essence the entire settlement amount comes from the

same source,'" even though the agreement artificially separates the fee and settlement arrangements (quoting Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996)); Manual for Complex Litig. § 21.75 (4th ed. 2008) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class.").

Having decided to apply the common fund doctrine, the court adopts the Ninth Circuit's 25% benchmark rate as its starting point. But the benchmark rate "must be supported by findings that take into account all of the circumstances of the case," Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002), and the court therefore also considers a handful of other relevant factors in considering the reasonableness of Plaintiff's request, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried; and (5) awards in similar cases, id. at 1048–50.

The court finds that consideration of these factors further supports Plaintiff's request. Class counsel put in a substantial amount of work to help over 120,000 class members recover almost exactly what they claimed to have lost. And counsel took a significant risk in doing so, as there was a very real possibility the case would result in no recovery. Counsel, which specializes in these types of cases, undoubtedly brought skill and experience to this pursuit, and was up against quality defense counsel who is also experienced in this area.

For these reasons, the court finds that a fee request falling just shy of 25% of the maximum settlement value—the appropriate benchmark in this case, see Williams, 129 F.3d at 1027 (holding that the size of the common fund was the total dollar figure made available for settlement and precluding the district court from considering that only a fraction of that fund had been recovered by class members, with the rest reverting to defendants); Fernandez v. Victoria Secret Stores, LLC, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *10 (C.D. Cal. July 21, 2008)—is reasonable under the

circumstances and in line with awards in similar cases.[6]  Accordingly, the court grants Plaintiff's request for a class counsel award of $500,000 to cover attorneys' fees and costs (which to date total $15,564.80).

### B. Class Representative Incentive Award

Finally, Plaintiff requests a class representative incentive award of $5,000 which "reflects the involvement and time the Class Representative dedicated to the case." (Doc. No. 27-1 at 21.)  Plaintiff's efforts include participating in "numerous pre-litigation telephonic and in-person meetings" with counsel, providing documents in connection with pre-litigation discovery, and participating in an all-day mediation by telephone.

"Incentive awards are fairly typical in class action cases." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958 (9th Cir. 2009).  "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." Dennis v. Kellogg Co., No. 09cv1786 L (WMC), 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013).  "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Id.

The court finds that, given his involvement, Plaintiff's request is reasonable, and the amount of the request is within the range awarded in similar cases.  See Reed v. 1-800

---

[6] In addition, this award remains reasonable when crosschecked against the lodestar-multiplier method.  When all is said and done, counsel will have spent approximately 400 hours in the prosecution of this action, for a lodestar of around $250,000 (hours spent multiplied by a reasonable hourly rate for the region and attorney experience).  (See Doc. No. 27-3 at 2.)  Under the lodestar approach, the requested fee results in a multiplier of about 1.94, which is within the range of normal.

Contacts, Inc., No. 12cv2359 JM (BGS), 2014 WL 29011, at *10 (S.D. Cal. Jan. 2, 2014) ($10,000 award); Singer v. Becton Dickinson and Co., 2010 WL 2196104, at *6 (S.D. Cal. June 1, 2010) ($25,000 award); Cicero v. DirectTV, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ($5,000 award); Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) ($50,000 award). Accordingly, the court grants Plaintiff's request.

### III. The Court's Order

Based on the preceding, the court orders as follows:

1. Class Members.[7] Class Members are defined as:

> All United States Staples Rewards® members who, during the Class Period, [1] bought a Rewards-eligible product and a non-Rewards eligible product in the same transaction, [2] used an item-specific coupon on the non-Rewards eligible product, and [3] were negatively impacted by Staples's pro rata coupon accounting. The term 'Class Period' means: March 24, 2009 through the date of entry of this Order. Excluded from the Class are Staples's Counsel, Staples's officers and directors, and the judge presiding over the Action.

2. Binding Effect of Order. This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members, including those who did not properly request exclusion as described in the court's order preliminarily approving the class settlement. (Doc. No. 20 at 6, ¶ 6.) This order does not bind persons who filed timely and valid Requests for Exclusion.

3. Release. Plaintiff and all Class Members who did not properly request exclusion are: (1) deemed to have released and discharged Staples from all claims arising out of or asserted in this Action and claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either

---

[7] Capitalized terms in this section, unless otherwise defined, have the same definitions as those terms in the Settlement Agreement.

directly or indirectly, these claims.  The full terms of the release described in this paragraph are set forth in Sections 2.8 and 2.9 of the Settlement Agreement and are specifically incorporated herein by this reference.

4. **Class Relief.**  Staples will issue Settlement Rewards to each Class Member who submitted a valid and timely Claim Form (i.e. each Authorized Claimant) according to the terms and timeline stated in the Settlement Agreement.

5. **Attorneys' Fees and Costs.**  Class Counsel is awarded $500,000 in attorneys' fees and costs.  Payment shall be made pursuant to the timeline stated in Section 2.4 of the Settlement Agreement.

6. **Individual Settlement Award.**  Plaintiff Neil Torczyner is awarded $5,000 as an individual settlement award.  Payment shall be made pursuant to the timeline stated in Section 2.3 of the Settlement Agreement.

7. **Court's Jurisdiction.**  Pursuant to the parties' request, the court will retain jurisdiction over this action and the parties thereto until final performance of the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the court grants Plaintiff's motions for final approval of class settlement and attorneys' fees.  The court hereby enters final judgment in this matter in accordance with the terms of the Settlement Agreement, but retains jurisdiction as described above.

IT IS SO ORDERED.

DATED:  August 28, 2017

JEFFREY T. MILLER
United States District Judge